# UNITED STATES DISTRICT COURT

__NORTHERN__ DISTRICT OF __ILLINOIS, EASTERN DIVISION__

UNITED STATES OF AMERICA

v.

LORNA A. CLARKE

FILED

MAR 1 2 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

MAGISTRATE JUDGE ASHMAN

UNDER SEAL

CRIMINAL COMPLAINT

CASE NUMBER: **08CR 208**

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __February 7, 2007__ in __Cook__ County, in the __Northern__ District of __Illinois__ defendant,

for the purpose of executing a scheme to defraud, knowingly caused to be transmitted in interstate commerce from Northlake, Illinois to Wal-Mart's headquarters in Bentonville, Arkansas, by means of wire and radio communications, certain writings, signs, and signals, namely a Deposit Summary Report,

in violation of Title __18__ United States Code, Section __1343__.

I further state that I am a __Special Agent with the United States Secret Service__ and that this complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT.

Continued on the attached sheet and made a part hereof: __X__ Yes  ____ No

_Matthew L. McClosky_
Matthew L. McClosky, Complainant

Sworn to before me and subscribed in my presence,

March 12, 2008          at     Chicago, Illinois
Date                              City and State

U.S. Magistrate Judge Martin C. Ashman
Name & Title of Judicial Officer

_signature_
Signature of Judicial Officer

| | |
|---|---|
| STATE OF ILLINOIS | ) |
| | ) SS |
| COUNTY OF COOK | ) |

I, Matthew L. McCloskey, being duly sworn on oath, state as follows:

### Background

1. I am a Special Agent of the United States Secret Service ("Secret Service") and have been so employed since May 2000. I am currently assigned to the Chicago Field Office. As part of my duties, I investigate violations of criminal law relating to counterfeit checks, bank fraud, wire fraud, money laundering, and other financial crimes. As a Special Agent of the Secret Service, I have received specialized training regarding counterfeit checks, bank fraud, wire fraud, and money laundering.

### Purpose of the Affidavit

2. I submit this affidavit to establish probable cause that on or about February 7, 2007 and on or about March 31, 2007, for the purpose of executing a scheme to defraud, LORNA A. CLARKE and MARLIN MARTINEZ knowingly caused to be transmitted in interstate commerce from Northlake, Illinois to Wal-Mart's headquarters in Bentonville, Arkansas, by means of wire and radio communications, certain writings, signs, and signals, namely Deposit Summary Reports, in violation of Title 18, United States Code, Section 1343.

### Basis for Facts Establishing Probable Cause

3. The information contained in this affidavit is provided solely for the purpose of establishing probable cause and therefore does not include all the information known to me or to law enforcement regarding this investigation.

4.  The information contained in this affidavit is based on my personal knowledge and investigation, my review of various documents and records, as well as information supplied to me by Wal-Mart employees.

## Overview of the Scheme

5.  LORNA CLARKE and MARLIN MARTINEZ are employed as full-time Accounting Office Associates at the Wal-Mart store located in Northlake, Illinois. Their responsibilities include preparing deposits, counting cash, and processing checks received in the store's cash office. CLARKE and MARTINEZ are also responsible for transferring money from the cash office to the appropriate cash register when the register's cash drawer is short of funds.

6.  CLARKE and MARTINEZ are also responsible for preparing and submitting a Deposit Summary Report each day and electronically transmitting the report to Wal-Mart Corporate Headquarters, located in Bentonville, Arkansas. This report documents the daily transactions of currency, checks, bank cards, debit cards, and other means of payment to the Wal-Mart store located at North Lake, IL. This report also documents the deposit amount, which is deposited into Wal-Mart's local bank account.

7.  From October 2006 until the present, CLARKE and MARTINEZ have implemented a scheme to defraud Wal-Mart of funds. As Accounting Office Associates, CLARKE and MARTINEZ have documented loans from the cash office to a specific cash register (register number 77) in the Wal-Mart store. Loans from the cash office are normally used to transfer money from the cash office to the register when more cash is needed in the drawer. However, CLARKE and MARTINEZ are documenting loans from the cash office to register number 77 without actually transferring the money to the register. Since the money was never actually

transferred to the register, the register would indicate a cash shortage absent further activity to hide the shortage.

8. As described in further detail below, in order to balance the register, CLARKE and MARTINEZ place counterfeit/altered checks into the daily deposit in the cash office. The total dollar amount of the counterfeit/altered checks placed in the daily deposit equals the total amounts which CLARKE and MARTINEZ provide as loans to register number 77. The counterfeit / altered checks are used to balance the total dollar amount in both the cash office daily deposit and register number 77.

9. Many of the counterfeit/altered checks used by CLARKE and MARTINEZ in this scheme are associated with Firstar Bank account number xxxx5503. All of the checks from this account have been returned to Wal-Mart by the bank as unauthorized. During this investigation, I interviewed the original account holder for Firstar Bank account number xxxxx5503. The account holder stated that she did not write or authorize the checks, which are from obsolete check stock because U.S. Bank took over Firstar Bank many years ago and issued new checks with the U.S. Bank as the bank name. The account holder also noted that the address on the counterfeit/altered checks is an address in Deerfield, Illinois that has not been her current address since 1999.

10. CLARKE and MARTINEZ documented the loans given to register number 77 in a Management Review Report, as required by Wal-Mart procedures. They also documented the total checks coming from register number 77 to the cash office in a Check Detail Report. In addition, when checks are deposited, CLARKE and MARTINEZ prepare a deposit slip that includes an Encoder Ribbon that lists all check amounts that are being placed into the deposit.

11.     As part of the scheme, CLARKE and MARTINEZ documented on the Encoder Ribbon the amounts corresponding with the counterfeit/altered checks which they placed in the daily deposit. These amounts do not correspond with the amounts documented by CLARKE and MARTINEZ in the Management Review Report or the Check Detail Report. This is an inconsistency in the accounting records. The amounts and entries on the Encoder Ribbon should match the Management Review Report and the Check Detail Report.

12.     At the end of each day, CLARKE and MARTINEZ total all of the cash and checks and prepare a deposit for the local account Wal-Mart has with JPMorgan Chase Bank. This deposit is documented in the Deposit Summary Report, which is transmitted to Wal-Mart's headquarters in Bentonville, Arkansas.

13.     Activity related to the scheme as described only occurs during the scheduled working hours of CLARKE and MARTINEZ. In addition, CLARKE and MARTINEZ are the only two individuals working in the cash office during the day shift, when activity related to this scheme occurs.

14.     Moreover, Wal-Mart's computer system will only allow an employee who is actually "clocked in" to login into the system. Therefore, unless CLARKE or MARTINEZ is actually "on the clock," her user ID and password would not allow access onto Wal-Mart's accounting system. All of the activity related to this scheme was undertaken using the user ID and password of CLARKE or MARTINEZ.

**Scope of the Scheme**

15. On February 6, 2007, CLARKE processed three loans from the cash office in the amounts of $2,900, $2,900, and $2,200 to register number 77.[1] Three counterfeit/altered Firstar Bank checks (account # xxxxx5503, checks # 1118, 1121, 1122) made payable to Wal-Mart in the amounts of $3,500, $3,500, and $1,000 were placed in the daily deposit and documented on the encoder ribbon included with the deposit slip.

16. On February 7, 2007, CLARKE prepared and finalized the Deposit Summary Report, which was electronically transmitted to Wal-Mart Corporate Headquarters.

17. On February 11, 2007, CLARKE processed two loans each in the amount of $3,000 to register number 77. Two counterfeit/altered Firstar Bank checks (account # xxxxx5503, checks # 1124, 1125) in the amounts of $3,000 and $3,000 were placed in the daily deposit and documented on the encoder ribbon included with the deposit slip. Both checks were not dated and only check #1125 was made payable to Wal-Mart.

18. On February 12, 2007, CLARKE prepared and finalized the Deposit Summary Report, which was electronically transmitted to Wal-Mart Corporate Headquarters.

19. On March 3, 2007, CLARKE processed four loans in the amounts of $2,900, $1,450, $2,100, and $1,550 to register number 77. Three counterfeit/altered Firstar Bank checks (account # xxxxx5503, checks # 1431, 1434, 1435) in the amounts of $3,500, $1,000, and $3,500 made payable to Wal-Mart were placed in the daily deposit and documented on the encoder ribbon included with the deposit slip.

20. On March 4, 2007, CLARKE prepared and finalized the Deposit Summary Report, which was electronically transmitted to Wal-Mart Corporate Headquarters.

---

[1] Throughout this affidavit, I have attributed bookkeeping activities to CLARKE and MARTINEZ based on the information reflected in paragraphs 13 and 14, as well as Wal Mart accounting records that reflect the described transactions were completed by CLARKE and/or MARTINEZ.

21. On March 26, 2007, CLARKE processed seven loans in the amounts of $500, $500, $950, $500, $550, $1,450, and $550 to register number 77. Two counterfeit/altered Firstar Bank checks (account # xxxxx5503, checks # 1430, 1432) each in the amount of $2,500 made payable to Wal-Mart were placed in the daily deposit and documented on the encoder ribbon included with the deposit slip.

22. On March 27, 2007, CLARKE prepared, and finalized the Deposit Summary Report, which was electronically transmitted to Wal-Mart Corporate Headquarters.

23. On March 30, 2007, MARTINEZ processed six loans in the amounts of $950, $875, $1,200, $550, $975, and $450 to register number 77. Two counterfeit/altered Firstar Bank checks (account #xxxxx5503, checks # 1429 and 1433) in the amounts of $2,500 and $2,500 were placed in the daily deposit. Check # 1429 was not made payable to anyone and check # 1433 was made payable to Wal-Mart. The deposit slip and the encoder ribbon could not be located in the accounting files.

24. On March 31, 2007, MARTINEZ prepared and finalized the Deposit Summary Report which was electronically transmitted to Wal-Mart Corporate Headquarters.

25. On April 5, 2007, CLARKE processed six loans in the amounts of $1,000, $800, $200, $950, $500, and $550 to register number 77. Two counterfeit/altered Firstar Bank checks (account # xxxxx5503, checks # 1358 and 1359) in the amounts of $2,000 each were placed in the daily deposit. Check #1358 was made payable to Wal-Mart while check #1359 was not made payable to anyone. The deposit slip and the encoder ribbon could not be located in the accounting files.

26. On April 6, 2007, CLARKE prepared and finalized the Deposit Summary Report which was electronically transmitted to Wal-Mart Corporate Headquarters.

27.     On April 15, 2007, CLARKE processed seven register loans in the amounts of $1,200, $900, $850, $1,200, $745, $855, and $250 to register number 77. Three counterfeit/altered Firstar Bank checks (account # xxxxx5503, checks #1437, 1438, 1439) in the amounts of $2,500, $2,500, and $1,000 made payable to Wal-Mart were placed in the daily deposit and documented on the encoder ribbon included with the deposit slip. The deposit slip was signed by MARTINEZ.

28.     On April 16, 2007, CLARKE prepared and finalized the Deposit Summary Report which was electronically transmitted to Wal-Mart Corporate Headquarters.

29.     On April 20, 2007, MARTINEZ processed eight register loans in the amounts of $850, $950, $550, $625, $815.25, $1,100, $550.75, and $559.00 to register number 77. Three counterfeit Firstar Bank checks (account #xxxxx5503, checks #1440, 1441, 1442) in the amounts of $2,500, $2,500, and $1,000 made payable to Wal-Mart were placed in the daily deposit. The deposit slip and encoder ribbon could not be located in the accounting files.

30.     On April 21, 2007, MARTINEZ prepared and finalized the Deposit Summary Report which was electronically transmitted to Wal-Mart Corporate Headquarters.

31.     On April 28, 2007, CLARKE processed eight loans in the amounts of $1,500, $900, $800, $800, $1,200, $500, $900, and $400 to register number 77. Three counterfeit/altered Firstar Bank checks (account #xxxxx5503, checks 1360, 1361, 1362) in the amounts of $2,000, $2,500, and $2,500 made payable to Wal-Mart were placed in the daily deposit and documented on the encoder ribbon included with the deposit slip. The deposit slip was signed by CLARKE.

32.     On April 29, 2007, CLARKE prepared and finalized the Deposit Summary Report, which was electronically transmitted to Wal-Mart Corporate Headquarters.

33. On May 9, 2007, MARTINEZ processed ten loans in the amounts of $1,200, $900, $800, $800, $750, $550, $500, $500, $500, and $500 to register number 77. Two counterfeit/altered Firstar Bank checks (account #xxxxx5503, checks 1443, 1445) in the amounts of $3,500 and $3,500 made payable to Wal-Mart were placed in the daily deposit and documented on the encoder ribbon included with the deposit slip. Both checks were not endorsed.

34. On May 10, 2007, CLARKE prepared and finalized the Deposit Summary Report, which was electronically transmitted to Wal-Mart Corporate Headquarters.

35. On May 13, 2007, CLARKE processed nine loans in the amounts of $1,900, $1,200, $800, $900, $100, $500, $700, $1,200, and $200 to register number 77. Three counterfeit/altered Firstar Bank checks (account #xxxxx5503, checks 1444, 1447, 1448) each in the amount of $2,500 made payable to Wal-Mart were placed in the daily deposit. The deposit slip and the encoder ribbon could not be located in the accounting files.

36. On May 14, 2007, CLARKE prepared and finalized the Deposit Summary Report, which was electronically transmitted to Wal-Mart Corporate Headquarters.

37. On May 20, 2007, CLARKE processed twelve loans in the amounts of $1,500, $1,200, $900, $800, $500, $400, $1,100, $300, $800, $700, $500, and $800 to register number 77. Three counterfeit/altered Firstar Bank checks (account #xxxxx5503, checks 1363, 1364, 1365) in the amounts of $3,500, $2,500, and $3,500 were placed in the daily deposit. On this date, the amounts entered on the encoder ribbon matched the amounts given as loans to register 77. Only check #1363 was made payable to Wal-Mart. The other two checks were not made payable to anyone.

38. On May 21, 2007, CLARKE prepared and finalized the Deposit Summary Report, which was electronically transmitted to Wal-Mart Corporate Headquarters.

39. On June 01, 2007, CLARKE processed eleven loans in the amounts of $1,480, $900, $800, $1,220, $1,500, $1,200, $600, $1,200, $1,800, $1,100, and $1,200 to register number 77. Four counterfeit/altered Firstar Bank checks (account #xxxxx5503, checks 1366, 1367, 1368, 1369) in the amounts of $3,500, $2,500, $3,500, and $3,500 were placed in the daily deposit and documented on the encoder ribbon included with the deposit slip. None of the checks were made payable to anyone. The deposit slip was signed by MARTINEZ.

40. On June 02, 2007, CLARKE prepared and finalized the Deposit Summary Report, which was electronically transmitted to Wal-Mart Corporate Headquarters.

41. On June 14, 2007, CLARKE processed six loans in the amounts of $1,200, $1,200, $1,200, $1,100, $1,100, and $1,200 to register number 77. Two counterfeit/altered Firstar Bank checks (account #xxxxx5503, checks 1373, 1425) both in the amount of $3,500 were placed in the daily deposit and documented on the encoder ribbon included with the deposit slip. Neither check was made payable to Wal-Mart.

42. On June 15, 2007, CLARKE prepared and finalized the Deposit Summary Report, which was electronically transmitted to Wal-Mart Corporate Headquarters.

43. On August 18, 2007, MARTINEZ processed fourteen loans in the amounts of $900, $800, $750, $550, $900, $1,380, $800, $950, $500, $70, $450, $350, $850, and $950 to register number 77. Two Bank One Bank checks (account # xxxxxxxxx4787, no visible check numbers) in the amounts of $5,100, and $5,100 were placed in the daily deposit and documented on the encoder ribbon included with the deposit slip. Only one check, in the name of James Johnson, was made payable to Wal-Mart. Both checks were returned unauthorized by Bank One.

44. On August 19, 2007, CLARKE prepared and finalized the Deposit Summary Report which was electronically transmitted to Wal-Mart Corporate Headquarters.

45. On August 29, 2007, CLARKE processed six loans in the amounts of $550, $850, $950, $550, $950, and $250 to register number 77. One Corus Bank check (account # xxx1156, check # 6234) in the amount of $4,100 made payable to Wal-Mart was placed in the daily deposit and documented on the encoder ribbon included with the deposit slip. The check was returned unauthorized by Corus Bank.

46. On August 30, 2007, CLARKE prepared and finalized the Deposit Summary Report, which was electronically transmitted to Wal-Mart Corporate Headquarters.

47. On September 19, 2007, surveillance video of the cash office shows MARTINEZ counting out cash and placing the cash in a white envelope. Shortly thereafter, the video shows CLARKE removing the envelope from the cash office and walking towards the back of the store. Roughly seven minutes later, the video shows CLARKE walking back to the front of the store without the white envelope.

48. On that same day, September 19, 2007, MARTINEZ processed seventeen register loans to register number 77 totaling $10,500. In addition, the Pickup Media Report from register number 77 indicated checks totaling $10,500. On that date, MARTINEZ did not deposit counterfeit/altered checks into the daily deposit. As a result, the deposit to the bank was short $10,500, which alerted Wal-Mart to the scheme.

49. On January 18, 2008, MARTINEZ processed five loans in the amounts of $1,354.62, $693.68, $1,347.64, $649.63, and $676.58 to register number 77. The reason was listed as "cashed associate check." Seven Bank of America corporate checks (account # xxxxxx9562, checks # 124092550, 124092549, 124092544, 124092554, 124092553, 124092537, and 124092535) in the amounts of $660.04, $693.68, $669.40, $687.60, $649.63, $676.58, and $685.22 were placed in the daily deposit and documented on the encoder ribbon included with

the deposit slip. The checks were from an Allstate Corporate account and made payable to various names with various addresses on N. Humphrey, Oak Park, Illinois. Suspect CLARKE resides on N. Humphrey, Oak Park, Illinois. All of the checks were returned unauthorized by Bank of America.

50. On January 18, 2008, CLARKE prepared and finalized the Deposit Summary Report which was electronically transmitted to Wal-Mart Corporate Headquarters.

## Conclusion

48. Based on the evidence described above, I believe probable cause exists that on or about February 7, 2007 and on or about March 31, 2007, for the purpose of executing a scheme to defraud, LORNA A. CLARKE and MARLIN MARTINEZ knowingly caused to be transmitted in interstate commerce from Northlake, Illinois to Wal-Mart's headquarters in Bentonville, Arkansas, by means of wire and radio communications, certain writings, signs, and signals, namely Deposit Summary Reports, in violation of Title 18, United States Code, Section 1343.

FURTHER AFFIANT SAYETH NOT.

Matthew L. McCloskey
Special Agent
United States Secret Service

SUBSCRIBED and SWORN to before me
this 12th day of March, 2008

MARTIN C. ASHMAN
United States Magistrate Judge